# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE

In re

Case No.  06-31517

DWIGHT DAVID BAYLESS
MELISSA JO BAYLESS

Debtors

## MEMORANDUM ON OBJECTION TO
## CONFIRMATION OF CHAPTER 13 PLAN

**APPEARANCES:**    BOND, BOTES & LAWSON, P.C.
Cynthia T. Lawson, Esq.
5418 Clinton Highway
Knoxville, Tennessee  37912
Attorneys for Debtors

WILLIAMS & PROCHASKA, P.C.
Joseph R. Prochaska, Esq.
Victoria A. Ferraro, Esq.
401 Church Street
Suite 2600
Nashville, Tennessee  37219
WM. STANTON MASSA, III
Post Office Box 1515
Morristown, Tennessee  37816-1515
Attorneys for CitiFinancial Auto Corporation

GWENDOLYN M. KERNEY, ESQ.
Post Office Box 228
Knoxville, Tennessee  37901
Chapter 13 Trustee

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Objection of CitiFinancial Auto Corporation f/k/a Transouth Financial Corporation to Confirmation of Chapter 13 Plan (Objection to Confirmation) filed on August 15, 2006, by CitiFinancial Auto Corporation (CitiFinancial). The court held a preliminary hearing on the Objection to Confirmation on August 30, 2006, at which time the parties agreed that an evidentiary hearing was not necessary, and the matter could be decided on stipulations and briefs. Pursuant to the court's Order entered on August 30, 2006, setting forth the briefing schedule, the issue is whether 11 U.S.C. § 1325(a)(5)(2005) allows the Debtors to surrender a vehicle in full satisfaction of the debt. The parties filed Joint Stipulations of Undisputed Facts (Joint Stipulations) on September 14, 2006. The Debtors' Brief in Support of Surrendering CitiFinancial Auto Corporation's Collateral, a 2004 Ford Freestar Van, "In Full Satisfaction of the Debt" (Brief) was filed on September 29, 2006. CitiFinancial filed its Response to Debtor's [sic] Brief in Support of Surrendering CitiFinancial Auto Corporation's Collateral, a 2004 Ford Freestar Van, "In Full Satisfaction of the Debt" (Response) on October 2, 2006.[1]

## I

The Debtors filed the Voluntary Petition commencing their bankruptcy case under Chapter 13 of the Bankruptcy Code on July 14, 2006. CitiFinancial is a secured creditor of the Debtors, by virtue of a Retail Installment Contract dated September 18, 2004, for the purchase of a 2004 Ford Freestar (Freestar). On August 10, 2006, CitiFinancial filed a claim in the Debtors' case in the

---

[1] In its Response, CitiFinancial requested additional time to file its brief, stating that it did not do so because it was negotiating alternate treatment with the Debtors. Irrespective of CitiFinancial's reasons therefor, it failed to abide by the August 30, 2006 Order setting the briefing schedule agreed upon by the parties, and the court is not inclined to extend the time further.

2

amount of $20,483.29 plus 13% interest.  The Debtors' Chapter 13 Plan (Plan) proposes bi-weekly

payments of $600.00 for 60 months, plus payment of all tax refunds in excess of $1,000.00, resulting

in a projected 100% dividend to nonpriority unsecured creditors.  With respect to CitiFinancial's

secured claim, the Plan proposes to surrender the Freestar "in full satisfaction of the debt."

CitiFinancial objected to confirmation of the Plan, stating that according to the N.A.D.A.

Used Car Guide, the value of the Freestar is $14,227.78, and arguing that the Plan does not permit

a deficiency claim, does not provide adequate protection for CitiFinancial's collateral as required by

11 U.S.C. § 1325(a)(1) (2005), and does not propose to pay the value of its collateral over time at

an appropriate interest rate as required by 11 U.S.C. § 1325(a)(5) (2005).  Because the court has

previously decided the precise issue raised by CitiFinancial in *In Re Ezell*, 338 B.R. 330 (Bankr. E.D.

Tenn. 2006), the Objection to Confirmation will be overruled, and the Trustee will be directed to

submit a confirmation order for entry.[2]

## II

Section § 1325(a) provides, in material part:

(a)  Except as provided in subsection (b), the court shall confirm a plan if—

    . . . .

---

[2] In its Response, CitiFinancial stated that it had negotiated with the Debtors for the insertion of language into the Plan which would grant CitiFinancial a deficiency claim in the event the court's determination in *Ezell* is reversed. The parties are free to enter into whatever agreement they choose; however, the court will not, as requested by CitiFinancial, force the Debtors to insert such language into their Plan.  On September 25, 2006, the Sixth Circuit Court of Appeals entered an Order denying the request for a direct appeal, pursuant to 28 U.S.C. § 158(d)(2) (2005), of the *Ezell* decision for procedural deficiencies; however, on that same date, it entered an Order granting permission for a direct appeal of the court's decision in *In re Long*, No. 96-30651, slip op. (Bankr. E.D. Tenn. July 12, 2006), which incorporated therein the *Ezell* decision.

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that—

(I) the holder of such claim retain the lien securing such claim until the earlier of—

(aa) the payment of the underlying debt determined under nonbankruptcy law; or

(bb) discharge under section 1328; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

(iii) if—

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

(C) the debtor surrenders the property securing such claim to such holder;

. . . .

For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the

4

910-day [period[3]] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing[.]

11 U.S.C. § 1325(a) (2005). In *Ezell*, the court determined that 11 U.S.C. § 1325(a), as amended

by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, removed the ability of

secured creditors to bifurcate their claims under 11 U.S.C. § 506(a) (2005) when the provisions of

the alphanumeric paragraph located at the end of § 1325(a) are met. *Ezell*, 338 B.R. at 342.

Accordingly, under this "Anti-Cramdown Provision," once the requirements therein are met, debtors

wishing to retain collateral under § 1325(a)(5)(B) must pay the full amount of the secured claim, and

debtors wishing to surrender collateral under § 1325(a)(5)(C) do so in full satisfaction of the debt.

*Ezell*, 338 B.R. at 340.

All of the applicable requirements set forth in the Anti-Cramdown Provision apply in this

case. The Debtors purchased the Freestar, a motor vehicle, on September 18, 2004, which was 663

days prior to filing their Voluntary Petition, and well within the 910-day period set forth in the

statute. The Retail Installment Contract executed by the Debtors grants CitiFinancial a purchase

money security interest in the Freestar, which the parties stipulated was acquired by the Debtors for

their personal use. Accordingly, based upon the court's determination in *Ezell*, which is controlling

on this issue and a copy of which is attached hereto, § 506(a) does not apply to CitiFinancial's claim,

and CitiFinancial's Objection to Confirmation shall be overruled.[4]

---

[3] The court supplies this word which was presumably inadvertently omitted by the drafters of the statute.

[4] The parties are free, however, to enter into whatever arrangement they wish with respect to any future distribution in the event the *Long* decision currently on appeal to the Sixth Circuit is reversed. *See supra* n.2.

FILED:  October 18, 2006

BY THE COURT

*/s/  RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

LARRY E. EZELL                                        Case No.  05-38219
REGINA A. EZELL

          Debtors


## MEMORANDUM ON OBJECTION TO CONFIRMATION
## FILED BY JP MORGAN CHASE BANK, N.A.


**APPEARANCES:**    RICHARD M. MAYER, ESQ.
        1111 Northshore Drive, Suite S-570
        Knoxville, Tennessee  37919
        Attorney for Debtors

        HUSCH & EPPENBERGER, LLC
        Holly N. Knight, Esq.
        Christopher M. Kerney, Esq.
        2525 West End
        Suite 1400
        Nashville, Tennessee  37203
        Attorneys for JPMorgan Chase Bank, N.A.

        GWENDOLYN M. KERNEY, ESQ.
        Post Office Box 228
        Knoxville, Tennessee  37901
        Chapter 13 Trustee

        HODGES, DOUGHTY & CARSON
        Thomas H. Dickenson, Esq.
        Post Office Box 869
        Knoxville, Tennessee  37901-0869
        Attorneys for Amicus Curiae Intervenors, Knoxville TVA Employees Credit
        Union, Y-12 Federal Credit Union, Tennessee Members 1st Federal
        Credit Union, Holston Methodist Federal Credit Union, Citizens National
        Bank, Bank of Tennessee, ORNL Federal Credit Union, and TNBank

NATIONAL ASSOCIATION OF CONSUMER
BANKRUPTCY ATTORNEYS
  Tara Twomey, Esq.
  2300 M. Street
  Suite 800
  Washington, DC  20037
BOND, BOTES & LAWSON, P.C.
  Cynthia T. Lawson, Esq.
  5418 Clinton Highway
  Knoxville, Tennessee  37912
  Principal Attorneys for Amicus Curiae Intervenors,
  National Association of Consumer Bankruptcy Attorneys

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Objection to Confirmation of Plan and Plan Terms Filed by JPMorgan Chase Bank, N.A. (Objection to Confirmation) filed on December 2, 2005, by JPMorgan Chase Bank, N.A. (Chase), a secured creditor, objecting to confirmation of the Debtors' Chapter 13 Plan. A preliminary hearing on the Objection to Confirmation was held on January 4, 2006, at which time the parties agreed that an evidentiary hearing would not be required and that all issues could be resolved on stipulations and briefs. Pursuant to an Order entered on January 6, 2006, the sole issue before the court is "whether 11 U.S.C. § 1325(a)(5), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, effective on October 17, 2005, allows the Debtors to surrender JPMorgan Chase Bank's collateral in full satisfaction of its claim."

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(L) (West 1993).

# I

The Debtors filed the Voluntary Petition commencing their joint Chapter 13 bankruptcy case on November 8, 2005. Chase is a creditor of Mrs. Ezell, holding a $24,942.07 claim secured by her 2003 Nissan Xterra (Xterra). Mrs. Ezell purchased the Xterra for the personal use of the Debtors from East Tennessee Nissan on December 26, 2003. Under the terms of the Debtors' Chapter 13 Plan (Plan), the Xterra is to be surrendered "in full satisfaction of debt owing."

The record before the court consists of the following: (1) the Joint Stipulations of Facts Filed by JPMorgan Chase Bank, N.A. filed by the parties on January 25, 2006, along with the following stipulated documents: (a) a Retail Installment Contract and Security Agreement (Contract) for the purchase of the Xterra executed by the Debtor, Regina A. Ezell, on December 26, 2003; (b) a Tennessee Certificate of Title

9

issued on February 4, 2004;[5] and (c)  the Proof of Claim filed by JPMorgan Chase Bank, N.A. as secured in

the amount of $24,942.07 on December 5, 2005; (2) the Supplemental Joint Stipulation of Facts Filed by

JPMorgan Chase Bank, N.A. filed by the parties on February 17, 2006; (3) the Debtors' Brief filed on January

13, 2006; and (4) the Memorandum of Facts and Law in Support of Objection to Confirmation by JPMorgan

Chase Bank, N.A. filed by Chase on February 8, 2006.   Also filed were the Amicus Curiae Brief of

Intervenors, filed on February 10, 2006, by Knoxville TVA Employees Credit Union, Y-12 Federal Credit

Union, Tennessee Members 1st Federal Credit Union, Holston Methodist Federal Credit Union, Citizens

National Bank, Bank of Tennessee, ORNL Federal Credit Union, and TNBank (collectively, Bank

Intervenors),[6] and the Brief of Amicus Curiae National Association of Consumer Bankruptcy Attorneys in

Opposition to the Objection to Confirmation filed by JPMorgan Chase Bank, N.A., filed on February 24,

2006, by the National Association of Consumer Bankruptcy Attorneys (collectively, NACBA Intervenors).[7]

On February 24, 2006, Chase filed a Motion to Set Aside Order Allowing NACBA to Intervene for Purposes

of Filing an Amicus Curiae Brief (Motion to Set Aside), arguing that the NACBA Intervenors failed to state

sufficient cause in support of their motion to intervene, that allowing NACBA to intervene would cause undue

and prejudicial delay, and that Chase was not given an opportunity to be heard on the NACBA Intervenors'

---

[5] The Contract was assigned by the seller to Bank One, NA, and the Tennessee Certificate of Title lists Bank
One, NA, as the first lienholder on the Xterra.  Chase's status as the holder of the claim secured by the Xterra is not
explained, nor is it questioned by the Debtors.  The court notes, however, that in a Motion for Entry of Agreed Order
filed by Chase on March 2, 2006, it explains this omission by identifying itself as the "successor by merger to Bank One,
N.A."

[6] On January 23, 2006, the Bank Intervenors filed a Motion for Permission to Intervene for Purposes of Filing
an Amicus Curiae Brief, which was granted by an Order entered on January 24, 2006.

[7] On February 10, 2006, the NACBA Intervenors filed a Motion for Permission to Intervene for Purposes of
Filing an Amicus Curiae Brief, which was granted by an Order entered on February 14, 2006.

motion.[8]  For reasons hereinafter discussed in Section IV of this Memorandum, Chase's Motion to Set Aside will be denied.

## II

As a preliminary matter, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 will hereinafter be referred to as "BAPCPA," references to specific sections of the Bankruptcy Code as amended by BAPCPA will be to 11 U.S.C. § ___ (2005) or to "Revised § ____," references to the Bankruptcy Reform Act of 1978, as amended, in effect prior to October 17, 2005, will be to 11 U.S.C. § ___ (2004) or to "Pre-BAPCPA § ___," and the concluding alphanumeric paragraph in Revised § 1325(a), the interpretation of which is the subject of this contested matter, will be referred to as the "Anti-Cramdown Paragraph."[9]

## III

Following years of debate, BAPCPA became effective on October 17, 2005, for all cases filed on and after that date.[10]  One section receiving revision was 11 U.S.C. § 1325 (2004), dealing with the requirements for confirmation of a Chapter 13 plan.  As it relates to this contested matter, Revised § 1325(a) now provides:

(a)  Except as provided in subsection (b), the court shall confirm a plan if—

---

[8] On February 28, 2006, the NACBA Intervenors filed a Response to Motion to Set Aside Order Allowing NACBA to Intervene for Purposes of Filing an Amicus Curiae Brief, along with a Memorandum of Law in support thereof.

[9] The drafters of Revised § 1325 did not provide the Anti-Cramdown Paragraph with an alphanumeric designation.  They merely isolated the paragraph at the end of Revised § 1325(a), making it difficult to cite.  The Anti-Cramdown Paragraph is quoted in italics *infra* at page 7 within the text of the quoted provisions of Revised § 1325(a).

[10] Certain of BAPCPA's provisions became effective on April 20, 2005, the date of enactment, but these provisions are not germane to the issue presently before the court.

. . . .

(5) with respect to each allowed secured claim provided for by the plan—

    (A) the holder of such claim has accepted the plan;

    (B)(i) the plan provides that—

        (I) the holder of such claim retain the lien securing such claim until the earlier of—

            (aa) the payment of the underlying debt determined under nonbankruptcy law; or

            (bb) discharge under section 1328; and

        (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

    (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

    (iii) if—

        (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

        (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

    (C) the debtor surrenders the property securing such claim to such holder;

. . . .

*For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the*

12

*subject of the claim, the debt was incurred within the 910-day [period[11]] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing[.]*

11 U.S.C. § 1325(a) (2005) (emphasis added).

Revised § 1325(a)(5) differs from Pre-BAPCPA § 1325(a)(5) with respect to the treatment of secured claims under subsection (B), which allowed a debtor, pre-BAPCPA, to cramdown secured claims to the value of the collateral securing the claim. Under Revised § 1325(a)(5)(B), the cramdown provision is eliminated as to claims secured by "a motor vehicle" and "any other thing of value" falling within the criteria encompassed within the provisions of the Anti-Cramdown Paragraph. Under Revised § 1325(a)(5), the allowed secured claim of the class of creditors defined in the Anti-Cramdown Paragraph is fixed at the amount of the creditor's claim, without resorting to the secured/unsecured bifurcation procedure mandated by 11 U.S.C. § 506 (2005). The focus of this contested matter centers around Revised § 1325(a)(5) and application of the Anti-Cramdown Paragraph to the "surrender[]" language of Revised § 1325(a)(5)(C).

The Debtors and Chase have stipulated that all elements of the Anti-Cramdown Paragraph have been satisfied. Mrs. Ezell acquired the Xterra for her personal use on December 26, 2003, 684 days before the filing of the Debtors' bankruptcy petition on November 8, 2005, and granted Chase a purchase money security interest in the motor vehicle to secure the unpaid portion of the purchase price which presently amounts to $24,942.07.

---

[11] The court supplies this word which was presumably inadvertently omitted by the drafters of the statute.

13

The parties do not dispute that, were the Debtors to keep the Xterra and provide for its payment through the Plan under Revised § 1325(a)(5)(B), the Anti-Cramdown Paragraph would provide Chase with an allowed secured claim of $24,942.07. The Debtors contend, however, that the Anti-Cramdown Paragraph also affords them the right to provide for the surrender of the Xterra through the Plan pursuant to Revised § 1325(a)(5)(C) in full satisfaction of Chase's $24,942.07 allowed secured claim because the Anti-Cramdown Paragraph eliminates Revised § 506 from any application to Revised § 1325(a)(5). Therefore, according to the Debtors, there can no longer be a deficiency claim following surrender of the collateral because Chase's claim is fully secured, notwithstanding any lesser amount that Chase might, in fact, realize upon its liquidation of the Xterra following surrender. Conversely, Chase contends that because the Anti-Cramdown Paragraph expressly provides that Revised § 506 does not apply to Revised § 1325(a)(5), its claim remains fully secured by the Xterra following its surrender, with the result being that any deficiency balance up to the amount of its $24,942.07 claim remains secured and must be treated as such in the Debtors' Plan.

Neither of the Intervenors has expressly argued the same points as the Debtors and Chase. The Bank Intervenors contend that the inapplicability of Revised § 506 under the Anti-Cramdown Paragraph is irrelevant, as that statute never applied in cases involving surrender under Pre-BAPCPA § 1325(a)(5)(C). According to this argument, the Anti-Cramdown Paragraph changes nothing, and secured creditors to whom property is surrendered under Revised § 1325(a)(5)(C) are still entitled to an unsecured deficiency claim following disposition of their collateral. Finally, the NACBA Intervenors endorse the Debtors' argument that since the Anti-Cramdown Paragraph serves to fix a claim as fully secured under Revised § 1325(a)(5), then surrender under Revised § 1325(a)(5)(C) fully satisfies the claim. Alternatively, the NACBA Intervenors argue that the Anti-Cramdown Paragraph effectively eliminates the application of Revised § 1325(a)(5) from

14

any secured claim satisfying the Anti-Cramdown Paragraph's criteria since those creditors no longer possess

allowed secured claims under Revised § 506.  According to this argument, a secured creditor's claim may,

however, still be modified pursuant to Revised § 1322(b)(2).[12]

---

[12] A Chapter 13 plan "may—. . . modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]" 11 U.S.C. § 1322(b)(2) (2005).

     This argument by the NACBA Intervenors is identical to the analysis by COLLIER ON BANKRUPTCY, as reflected in the following excerpt:

> Language added at the end of section 1325(a) by the 2005 amendments to the Bankruptcy Code removes certain claims from the protections of section 1325(a)(5).  This new language states that for purposes of section 1325(a)(5), section 506 shall not apply to certain claims.  Such claims, therefore, cannot be determined to be allowed secured claims under section 506(a) and are not within the ambit of section 1325(a)(5).  Such claims may still be modified under section 1322(b)(2), which allows modification of the rights of holders of secured claims, with certain exceptions, but the restrictions on modification that apply to allowed secured claims under section 1325(a)(5) do not apply.  A debtor is presumably bound only by the dictates of good faith and the other provisions of the Code in determining how such claims may be modified.  Some courts, understandably, may look to prior law for guidance regarding what modifications are equitable.

8 COLLIER ON BANKRUPTCY ¶ 1325.06[1][a] (15th ed. rev. 2005).  Because an application of Revised § 1325(a)(5) in this manner is inconsistent with the purpose of the statute as a whole and the Anti-Cramdown Paragraph in particular, and because it does not take into account the entire claims allowance and disallowance process set forth in 11 U.S.C. §§ 501 (West 2005) and 502 (West 2005), the court does not find this argument persuasive and rejects the same. S*ee* 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.").

**A**

Revised § 1325, entitled "Confirmation of plan," provides that if certain requirements are met, the court "shall" confirm a Chapter 13 plan. *See* 11 U.S.C. § 1325(a) (2005). The confirmation requirements of Revised § 1325(a)(5) offer debtors three options for dealing with allowed secured claims if the plan is to be confirmed: (1) obtain the creditor's acceptance of the plan (Revised § 1325(a)(5)(A)); (2) provide for the cramdown of the creditor's allowed secured claim (Revised § 1325(a)(5)(B)), subject to the class of secured creditors depicted in the Anti-Cramdown Paragraph;[13] or (3) surrender of the collateral to the secured creditor (Revised § 1325(a)(5)(C)).

Under Pre-BAPCPA § 1325(a)(5),

[a] debtor has three options regarding secured debt. 11 U.S.C. § 1325(a)(5). First, the debtor and creditor may agree on terms. 11 U.S.C. § 1325(a)(5)(A). Second, the debtor may surrender the collateral to the creditor. 11 U.S.C. § 1325(a)(5)(C). The creditor will then sell the collateral, by definition receiving the foreclosure value. The cash realized will be subtracted from the debt and the difference allowed as an unsecured claim in the debtor's chapter 13 plan. Third, . . . the debtor may retain the collateral. His chapter 13 plan will include a secured claim for the value of the collateral as of the date of filing and an unsecured claim for any difference between the amount owed the creditor and the allowed secured claim. 11 U.S.C. § 506(a), § 1325(a)(5)(B). The secured claim is for the replacement value of the collateral. *Rash*, 117 S. Ct. at 1886. Replacement value, not foreclosure value, is used because, "if a debtor keeps the property and continues to use it, the creditor obtains at once neither the property nor its value and is exposed to double risks: The debtor may again default and the property may deteriorate from extended use." *Id.* at 1885.

*Davis-McGraw, Inc. v. Johnson (In re Johnson)*, 247 B.R. 904, 906 (Bankr. S.D. Ga. 1999) (footnotes omitted).

---

[13] For secured creditors not within the scope of the Anti-Cramdown Paragraph, Revised § 1325(a)(5)(B) allows for cramdown in substantially the same manner as under Pre-BAPCPA § 1325(a)(5)(B). *See In re Horn*, ___ B.R. ___, 2006 WL 416314, 2006 Bankr. LEXIS 234 (Bankr. M.D. Ala. Feb. 23, 2006).

In order to proceed to the issue before the court, it is first necessary to determine whether Pre-BAPCPA § 506(a) was called into play in scenarios where a debtor surrendered collateral pursuant to Pre-BAPCPA § 1325(a)(5)(C), or was applicable only in situations involving cramdown under Pre-BAPCPA § 1325(a)(5)(B). *See Gen. Motors Acceptance Corp. v. Valenti (In re Valenti)*, 105 F.3d 55, 59 (2d Cir. 1997) ("To determine the value of the creditor's allowed secured claim [under Pre-BAPCPA § 1325(a)(5)], we turn to 11 U.S.C. § 506(a) [(2004)].").

**B**

Revised § 1325(a)'s Anti-Cramdown Paragraph provides that Revised § 506 "shall not apply to a claim described in [Revised § 1325(a)(5)]" if the creditor has a purchase money security interest in a "motor vehicle" purchased for the debtor's use within 910 days preceding the bankruptcy or in "any other thing of value" purchased within the 1-year period preceding the bankruptcy filing. Clearly, the Debtors must provide for the treatment of Chase's allowed secured claim within the framework mandated by Revised § 1325(a)(5).

The Anti-Cramdown Paragraph eliminates the application of Revised § 506 to a "motor vehicle" and "any other thing of value" falling within its terms to Revised § 1325(a)(5). Revised § 506, entitled "Determination of Secured Status," provides as follows:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

17

(2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing.  With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

(c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

> (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506 (2005).[14]

Under Pre-BAPCPA law,

Section 506 is to be applied by bankruptcy courts when a party in interest objects, pursuant to § 502, to the value of a proof of secured claim filed by a creditor in the bankruptcy proceedings. . . . It is clear then that § 506 is designed to determine the value and amount of a creditor's secured claim when the creditor's claim is undersecured in relation to the property securing the debt.  In order to achieve its given purpose, § 506(a) divides or bifurcates allowed claims into two parts: (1) a secured claim to the extent of the value of [the collateral]; and (2)

---

[14] Pre-BAPCPA § 506 did not contain subsection (a)(2), which was added to codify the Supreme Court's holding in *Assocs. Commercial Corp. v. Rash*, 117 S. Ct. 1879, 1885 (1997), in which the Court held that valuation of a secured claim under § 506(a) should be based upon replacement value.

an unsecured claim to the extent the value of [the collateral] is less than the amount of such allowed claim.

*Bank One, NA v. Flowers*, 183 B.R. 509, 514-15 (N.D. Ill. 1995).

Pre-BAPCPA § 1325(a)(5), as does Revised § 1325(a)(5), dictated the treatment to be accorded an allowed secured claim if the debtor was to obtain confirmation of the Chapter 13 plan.  Although Pre-BAPCPA § 1325(a)(5)(B) and Pre-BAPCPA § 1325(a)(5)(C) provided different remedies and were mutually exclusive, *see In re Covington*, 176 B.R. 152, 155 (Bankr. E.D. Tenn. 1994), both relied upon Pre-BAPCPA § 506(a)[15] to bifurcate a creditor's claim into its allowed secured and allowed unsecured components.

> Subsection (C) is clear.  If the debtor surrenders his interest in the property securing the claim, the court can find that the requirements of § 1325(a)(5) have been met.  The creditor may then foreclose his lien and file an unsecured claim for his actual or expected deficiency.  It would be possible for the court to confirm the debtor's plan even though there was a disagreement concerning the value of the property and therefor a disagreement over the amount in which the unsecured claim for deficiency should be allowed.  In most cases it would not be necessary for the court to determine the amount of the allowed unsecured claim until the creditor had completed foreclosure of the lien.

> If the debtor wishes to retain the property, subsection (C) would have no application.  Instead, the debtor would utilize subsection (B).  Generally this would be done by providing in the plan a string of payments which would have a present value equivalent to the amount of the allowed secured claim.  If the debtor and the creditor were unable to agree upon the value of the collateral, it would be necessary for the court to determine such value in order to determine whether the present value of the string of payments was at least equal to amount of the allowed

---

[15] Pre-BAPCPA § 506, entitled "Determination of Secured Status," provides in material part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.  Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506 (2004).

secured claim.  Unlike the situation provided by subsection (C), it would be necessary for the court to determine value prior to confirmation.  Also, valuation could not be determined by the amount received by the creditor upon foreclosure since foreclosure would not yet have been accomplished.

*In re Stockwell*, 33 B.R. 303, 305 (Bankr. D. Or. 1983); *see also First Union Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 473 (B.A.P. 6th Cir. 1998) ("[Pre-BAPCPA §] 1325(a)(5)(C) permits a Chapter 13 debtor to satisfy an 'allowed secured claim' by surrendering the property securing the claim.  After disposition of the surrendered collateral, an undersecured creditor may only assert the deficiency as a general unsecured claim."); *In re White*, 169 B.R. 526, 529 (Bankr. W.D.N.Y. 1994) ("The debtor could alternatively surrender the collateral to the secured creditor in full satisfaction of the creditor's 'secured' claim, relegating the creditor only to 'unsecured' status as to any deficiency.").  Although these cases were decided under Pre-BAPCPA § 1325(a)(5), they all apply Pre-BAPCPA § 506(a), if not by direct reference then indirectly, to the bifurcation of the creditor's claim into its secured and unsecured components upon surrender of the collateral pursuant to Pre-BAPCPA § 1325(a)(5)(C).  The analysis remains the same under Revised § 1325(a)(5) except for the elimination of Revised § 506 from the equation when the allowed secured claim is determined under the provisions of the Anti-Cramdown Paragraph.

Under Pre-BAPCPA § 1325(a)(5), it was only when valuation of a claim was called into question that the valuation procedure dictated by Pre-BAPCPA § 506(a) was triggered to determine the amount of the creditor's allowed secured claim.  And, in the context of Pre-BAPCPA § 1325(a)(5)(B) and (C), as well as under Revised § 1325(a)(5)(B) and (C), valuation is an issue.  Clearly, Pre-BAPCPA § 506(a) was utilized to determine the amount of a creditor's allowed secured claim when the debtor utilized the cramdown provisions of Pre-BAPCPA § 1325(a)(5)(B).  As discussed, Pre-BAPCPA § 506(a) also came into play when the debtor, in compliance with Pre-BAPCPA § 1325(a)(5)(C), surrendered the collateral.  The creditor then

liquidated its collateral which fixed the amount of its allowed secured claim at the liquidation value, and its allowed unsecured claim at the deficiency balance.

The argument that Pre-BAPCPA § 506(a) had no application to surrender under Pre-BAPCPA § 1325(a)(5)(C) is misplaced. Valuation of a creditor's allowed secured claim under Pre-BAPCPA § 506(a) was "determined in light of the purpose of the valuation and of the proposed disposition or use of such property . . . ." 11 U.S.C. § 506(a) (2004).[16] Upon surrender under Pre-BAPCPA § 1325(a)(5)(C), liquidation value was clearly the yardstick by which the allowed secured claim was determined, while, for cramdown purposes under Pre-BAPCPA § 1325(a)(5)(B), replacement value was the criteria. *See Assoc. Commercial Corp. v. Rash*, 117 S. Ct. 1879, 1885 (1997).

## C

The Anti-Cramdown Paragraph serves to eliminate Revised § 506 from the allowed secured/unsecured claim bifurcation treatment otherwise mandated by Revised § 506 with regard to those claims secured by "a motor vehicle" and "any other thing of value" falling within its provisions. In other words, when the creditor files its claim as secured, the Anti-Cramdown Paragraph precludes the use of Revised § 506(a) to reduce or bifurcate that claim into secured and unsecured components. Unless the amount of the claim is subject to reduction for reasons other than collateral value, the creditor's allowed secured claim is fixed at the amount at which the claim is filed.

Accordingly, under Revised § 1325(a)(5), a creditor holding a secured claim falling within the scope of the Anti-Cramdown Paragraph is fully secured for the amount of its claim, which is, in actuality, the debt

---

[16] *See supra* n. 11.

owed.  If the property is to be retained pursuant to Revised § 1325(a)(5)(B), the debtor must treat the entire claim as secured, and unless the creditor agrees to other treatment, must propose a plan that will pay the full amount of the claim as secured over the life of the plan.  It only stands to reason that the same analysis is true when applied to surrender under Revised § 1325(a)(5)(C) – the creditor is fully secured, and surrender therefore satisfies the creditor's allowed secured claim in full.

Although the statutory language itself is not particularly ambiguous, there is no question that, because of its construction, Revised § 1325(a) is, at best, confusing.  *See* Henry E. Hildebrand, III, *Impact of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 on Chapter 13 Trustees*, 79 Am. Bankr. L.J. 373, 386 n. 65 (Spring 2005) ("Though it appears that the intent of the hanging paragraph is to preclude the claim splitting or 'cramdown' that is embodied in 506(a), the means by which such restriction was drafted is confusing, at best.").  A review of the legislative history for guidance does not provide any particular insight that is helpful to the court; however, it also does not provide any evidence that the court's determination does not comport with Congressional intent when including the Anti-Cramdown Paragraph in Revised § 1325(a).

In the House of Representatives' Judiciary Committee Report dated April 8, 2005, the "Section-by-Section Analysis and Discussion" breaks down BAPCPA, as proposed in Senate bill 256.  Section 306, concerning § 1325(a)(5) is found in the section entitled "Title III:  Discouraging Bankruptcy Abuse," and the synopsis states the following:

> *Sec. 306.  Giving Secured Creditors Fair Treatment in Chapter 13.*  Subsection (a) of section 306 of the Act amends Bankruptcy Code section 1325(a)(5)(B)(i) to require as a condition of confirmation that a chapter 13 plan provide that a secured creditor retain its lien until the earlier of when the underlying debt is paid or the debtor receives a discharge.  If the case is dismissed or converted prior to completion of the plan, the secured creditor is entitled to retain its lien to the extent recognized under applicable nonbankruptcy law.

> Section 306(b) adds a new paragraph to section 1325(a) of the Bankruptcy Code specifying that Bankruptcy Code section 506 does not apply to a debt incurred within the two and one-half year period preceding the filing of the bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor within 910 days preceding the filing of the petition.  Where the collateral consists of any other type of property having value, section 306(b) provides that section 506 of the Bankruptcy Code does not apply if the debt was incurred during the one-year period preceding the filing of the bankruptcy case.

H.R. REP. 109-31, Pt. 1, at 71-72, 109th Cong., 1st Sess. (2005).  Similarly, under the section entitled "Highlights of Bankruptcy Reforms" concerning "Consumer Creditor Bankruptcy Protections," the above revisions were stated as follows:

> Protections for Secured Creditors.  S. 256's protections for secured creditors include a prohibition against bifurcating a secured debt incurred within the 910-day period preceding the filing of a bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's personal use.  Where the collateral consists of any other type of property having value, S. 256 prohibits bifurcation of specified secured debts if incurred during the one-year period preceding the filing of the bankruptcy case.  The bill clarifies current law to specify that the value of a claim secured by personal property is the replacement value of such property without deduction for the secured creditor's costs of sale or marketing.

H.R. REP. 109-31, Pt. 1, at 17, 109th Cong., 1st Sess. (2005).

As these sections evidence, Congress intended to prevent bifurcation under Revised § 1325(a)(5) of the class of secured claims falling within the scope of the Anti-Cramdown Paragraph.  Beyond these statements of Congressional intent, which basically mirror the statutory language, there is no further clarification.  The court has no choice but to interpret the Anti-Cramdown Paragraph as written, *i.e.*, that it applies to both Revised § 1325(a)(5)(B) and (C).  *See United States v. Ron Pair Enters.*, 109 S. Ct. 1026, 1030 (1989) (holding that if the language of a statute is plain and unambiguous, "the sole function of the courts is to enforce it according to its terms.").  To apply the Anti-Cramdown Paragraph only to Revised § 1325(a)(5)(B), but not to Revised § 1325(a)(5)(C), would allow a secured creditor, upon surrender of its

23

collateral, to bifurcate its claim into different secured and unsecured components, contrary to its unambiguous mandate that Revised § 506 "shall not apply to a claim described in [Revised § 1325(a)(5)]."  11 U.S.C. § 1325(a) (2005).

Furthermore, were the court to find that a secured creditor whose collateral has been surrendered under Revised § 1325(a)(5)(C) is entitled to file either a secured or unsecured deficiency claim, the method of determining the amount of the allowed deficiency claim would be demonstrably at odds with Revised § 506(a), which, as applied to Chapter 13 consumer debtors, directs that for purposes of valuing personal property securing an allowed claim, the value "shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing" and, to the extent the property was "acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined."  11 U.S.C. § 506(b) (2005).  This method for valuing a creditor's allowed secured claim where the collateral is personal property acquired for "personal, family, or household purposes," cannot apply if the property is surrendered under Revised § 1325(a)(5)(C) and thereafter liquidated by the creditor in accordance with applicable state law.[17]

---

[17] Under Tennessee law, a secured creditor "may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing[,]" TENN. CODE ANN. of § 47-9-610 (2001), and following disposition, "the obligor is liable for any deficiency[,]" TENN. CODE ANN. § 47-9-615(d)(2) (2001), which includes costs of disposition and attorneys' fees associated therewith. TENN. CODE ANN. § 47-9-616(c)(5) (2001); *see also NationsBank v. Klegg*, No. 01-A-01-9510-CH-00469, 1996 Tenn. App. LEXIS 214, at *4-5, 1996 WL 165513, at *2 (Tenn. Ct. App. Apr. 10, 1996) (discussing consequences of voluntary surrender of collateral).

**D**

In summary, the court finds that the Anti-Cramdown Paragraph, as mandated by its terms, applies equally to both Revised § 1325(a)(5)(B) and Revised § 1325(a)(5)(C).  Therefore, a creditor whose claim falls within the scope of the Anti-Cramdown Paragraph is fully secured under Revised § 1325(a)(5)(C), regardless of the amount it might realize from the liquidation of its collateral upon surrender.  Because application of § 506(a) is entirely removed from the picture, there can be no deficiency balance, either secured or unsecured, and surrender satisfies an allowed secured claim in full.

The court finds this result fair and in harmony with the language of the Anti-Cramdown Paragraph. A creditor whose allowed secured claim falls within the terms of the Anti-Cramdown Paragraph is no more or less disadvantaged by the debtor's surrender of its collateral under Revised § 1325(a)(5)(C) than is the debtor who, if he or she chooses to retain the collateral, must, in compliance with Revised § 1325(a)(5)(B), pay the full amount of the debt in satisfaction of the creditor's allowed secured claim.  To the extent an actual disparity might exist between the value of the collateral and the amount of the creditor's allowed secured claim, perhaps negotiation between the debtor and creditor would allow the "holder of such claim" to accept a treatment under the plan pursuant to Revised § 1325(a)(5)(A) that is more akin to the traditional cramdown permitted under Revised § 1325(a)(5)(B) for secured creditors whose claims do not fall within the ambit of the Anti-Cramdown Paragraph.  This approach appears to the court as one that could prove advantageous to both debtors and creditors.

In accordance with the above, Chase's Objection to Confirmation will be denied, and the Debtors' Chapter 13 Plan will be confirmed.

25

IV

As previously stated, Chase's Motion to Set Aside shall be denied.  Pursuant to Rule 2018(a) of the

Federal Rules of Bankruptcy Procedure, "[i]n a case under the Code, after hearing on such notice as the court

directs and for cause shown, the court may permit any interested entity to intervene generally or with respect

to any specified matter."  FED. R. BANKR. P. 2018(a).  This rule "provides a formal mechanism that expands

the right to be heard to a wider class than those who qualify under the 'person aggrieved' standard."  *Int'l

Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir. 1991).   "A party seeking

intervention must show 'cause,' such as an economic interest in the case or a concern with the precedential

ramifications of a ruling[;]" however, the decision to allow intervention is within the court's discretion,

although intervention "should not be permitted if the intervenor's rights are already adequately represented

or intervention would result in delay or prejudice."  *In re Durango Ga. Paper Co.*, 336 B.R. 594, 596 (Bankr.

S.D. Ga. 2005); *see also In re First Interregional Equity Corp.*, 218 B.R. 731, 736 (Bankr. D.N.J. 1997); *In

re City of Bridgeport*, 128 B.R. 686, 687 (Bankr. D. Ct. 1991) ("As unlimited intervention in contested

matters could cause unwarranted and prejudicial delays in the resolution of what are essentially disputes

between two parties, 'Rule 2018 gives courts the discretion to balance the needs of a potential intervenor

against any delay or prejudice which would result from intervention.'") (quoting *Metro N. State Bank v.

Barrick Group, Inc. (In re Barrick Group, Inc.)*, 98 B.R. 133, 135 (Bankr. D. Ct. 1989)).

This narrow question before the court raises an issue of first impression with precedential

ramifications, relating to Chapter 13 cases filed in this court.  Since the implementation of BAPCPA,

bankruptcy courts have been faced with complex issues of interpretation.  The issue here presents itself solely

26

in the context of BAPCPA and, therefore, it is not surprising that outside parties, such as the Bank Intervenors and the NACBA Intervenors, would be interested in presenting their arguments in favor of their opposing viewpoints. Also relevant is the fact that the Intervenors' arguments are different from those expressed by the Debtors and Chase, again supporting the court's decision to allow intervention in this case.[18] Moreover, neither the Debtors nor Chase has been subjected to undue or prejudicial delay by allowing the NACBA to intervene. Its motion was filed on February 10, 2006, with the court fixing a deadline of February 24, 2006, for the filing of an amicus curiae brief. The NACBA complied with the court's Order and timely filed its brief. The court's determination is now being handed down within a short time, which, clearly, cannot be deemed an undue or prejudicial delay.

With respect to Chase's contention that it was not afforded an opportunity to be heard, the court refers Chase to the Rules of Construction for the Bankruptcy Code, which state the following:

In this title—

(1) "after notice and a hearing", or a similar phrase—

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if—

(i) such hearing is not requested timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before such act must be done and the court authorizes such act[.]

---

[18] Curiously, Chase did not file a motion to set aside the court's Order entered on January 24, 2006, allowing the Bank Intervenors to file an amicus curiae brief, perhaps believing that this group better supported Chase's position than did the NACBA Intervenors.

11 U.S.C. § 102(1) (2005).  The NACBA Intervenors' motion was filed on February 10, 2006, and was granted on February 14, 2006, giving it until February 24, 2006, a period of ten days, to file an amicus curiae brief.  Faced with the concern for undue and prejudicial delay, coupled with the fact that a hearing on the motion was not requested by any party in interest, including Chase, and, in fact, was not necessary, the court granted the motion without a hearing.  Furthermore, Chase was served with the Motion to Intervene via ECF on February 10, 2006, and it was served with the court's February 14, 2006 Order via U.S. Mail on February 16, 2006.  Yet, at no point prior to February 24, 2006, the date upon which the NACBA Intervenors' amicus curiae brief was due, did Chase request a hearing on the Motion to Intervene.  Chase now requests a hearing on its Motion to Set Aside, which it scheduled for March 29, 2006; however, the court finds that it would be an undue and prejudicial delay to postpone a decision on this issue for another two weeks, particularly in light of the court's discretion in allowing intervention in the first place.  Accordingly, and for the foregoing reasons, the Motion to Set Aside filed by Chase shall be denied.

An order consistent with this Memorandum will be entered.

FILED:  March 13, 2006

BY THE COURT

*/s/ RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE